THOMAS WHITLOCK, GUARDIAN OF OSCAR D. JONES, VS. CHANDLER H. SMITH, *et al.*

1. It is irregular, and sanctioned by no rule of Chancery practice, to direct a special issue as to the lunacy of a party upon particular dates to be tried in a court of law upon an *ex parte* petition of a friend of the lunatic.

2. Two methods of investigating the subject of the lunacy of a party are known to Chancery practice. One is where the matter of lunacy becomes a subject of inquiry in a cause pending. In this case the chancellor may and usually does direct an issue to be tried in a court of law to try the question of the lunacy of the party. The other is where a commission *de lunatico inquirendo* is awarded upon an *ex parte* petition of a friend of the alleged lunatic. Some of the incidents of each method considered.

Appeal from the Circuit Court for Madison County. The case is stated in the opinion of the Court.

*Finley & Patterson* for Appellant.

*Vann & Whitner* for Appellee.

WESTCOTT, J., delivered the opinion of the court.

Thomas Whitlock filed his petition in chancery alleging

that Oscar D. Jones was, during the years 1867–68, and before that time, a lunatic ; that after proceedings instituted for that purpose in the court of chancery, he, the said Whitlock, was on the 2nd of April, 1868, appointed guardian of the estate of said lunatic, for the special purpose of taking charge of and managing the farm of the said lunatic during the year 1868 ; that during the year 1868, and while the said Jones was of unsound mind, he executed three several mortgages (one to John S. Tooke for $500, which was afterwards transferred to Thomas & Livingston, one to Chandler H. Smith for $1,290 39 ; one to Caldwell & Morris of New York, dated Dec. 11th, 1867, for $14,246 96,) which cover his entire estate, the mortgages being to secure the firm debts of Wardlaw & Co., of which firm he was a member ; that at the time the said Jones entered into co-partnership with these parties, he was incapable of forming a copartnership from insanity ; that one of the mortgage creditors, Caldwell & Morris, filed a bill against the alleged lunatic on the 19th Dec., 1868, praying a foreclosure, having previously persuaded the alleged lunatic to acknowledge service and waive notice ; that a decree *pro confesso* was entered against said lunatic, and the master was directed to sell all of the property of the alleged lunatic as well as property alleged to belong to his wife, and that the master is taking proceedings looking to a sale of the property under the decree.

The petition prays that this decree may be opened and set aside, and that the petitioner as next friend may be permitted to plead, answer or demur to said bill, and that in the meantime all other proceedings be stayed, and for a final decree declaring said mortgage void. There was an additional prayer that the chancellor would appoint the petitioner guardian of all the matters of said lunatic, and that it might be referred to a master to investigate as to the lunacy.

Upon the filing of the petition, it was ordered by the chancellor that the statements in said petition " so far as pertains to the lunacy of the said Oscar D. Jones, be referred to a

jury at the next term of the circuit court," and citations were ordered to be issued to certain parties whom the petition affirmed were persons who had made contracts with the alleged lunatic during the period of his insanity, as well as to all parties having suits against said lunatic, to be and appear at said term, and directing further that subpœnas should issue to such witnesses as may be required by either or any of the parties. Citations were issued to several parties and subpœnas were issued. A jury was empanelled at the succeeding term of the circuit court, and were sworn to well and truly try " the issue joined, viz : whether O. D. Jones was a lunatic and mentally incapable of managing his business on the 11th Dec., 1867, and on the 4th Dec., 1868." The issue was determined in a verdict as follows : " We the jury find that Oscar D. Jones was generally insane, but capable of managing his business affairs on the 11th Dec., 1867, and on the 4th Dec., 1868."

The petitioner moved for a new trial upon various grounds, which in the view we have taken of the case need not be detailed. This motion was overruled and an appeal is now prosecuted to this court by the petitioner.

The petition, it will be seen, bears two aspects. It seeks to affect proceedings then being prosecuted in chancery by Caldwell & Morris, and it seeks also an inquiry into the alleged fact of lunacy. By the order of the Chancellor, even persons who had simply made contracts with the alleged lunatic were brought in by citation at the term of the court at which the issue was tried, while the issue tried embraces the fact of insanity upon two particular days. The petition is *ex parte*, is not entitled in the chancery cause pending, and no order under this petition could be made which could operate as an order in the chancery proceeding. It is not for this Court, when no portion of this record is before us to suggest the proper course to be pursued in that cause, or to suggest the method to call into question the effect of that decree, or to open the decree.

The record brought to this court embraces no portion of the record in the chancery cause, and we cannot, nor could the Chancellor below in this proceeding, by an independent petition, make any order staying the cause in chancery. Therefore, so much of the orders made in this proceeding which are to operate directly in that cause, is irregular and unauthorized.

The only other branch of the case presented by this record, which we think it material to consider, is so much of it as purports to be an inquiry into the fact of lunacy. The verdict of the jury must be interpreted with reference to the issue they were to try. The issue here was as to the insanity of the party at two named periods of time ; it did not embrace the question of general insanity. Their verdict is, that he was generally insane, but capable of managing his business at these dates. Such a verdict is inconsistent and absurd. Aside from this, however, this proceeding is entirely misconceived, and the petition must be dismissed. There is no such practice known to a court of equity. Such a matter as the insanity or lunacy of a party becomes the subject matter of investigation in a court of chancery in two ways. If it is alleged in an answer, or is pleaded as a matter of defence, an issue is usually directed to be framed, which may be, and usually is, sent to a court of law to be tried, but the court of law in cases of issues directed by the Chancellor never grants a new trial. This, if obtained at all, is obtained at the hands of the Chancellor after the record of the trial of the issue is returned to him. It may be also inquired into upon petition, addressed to the Chancellor, praying for a commission *de lunatico inquirendo.* The proceeding in the case now under consideration does not belong to the first class of cases, and is wanting in the essential requisites of the second. 2 Barb. Ch'y Prac., 227. The second proceeding, when properly conducted, is upon an *ex parte* petition, and it is not required that persons who have had dealings with the party alleged to be a lunatic during the period of his

alleged lunacy should be made parties, and where the proceeding is thus had, it is not conclusive upon their rights. Sir William Grant, Master of the Rolls, in Hall vs. Warren, 9 Ves., 609, says, " the inquisition taken in the absence of the party would not be conclusive upon him ; it would be a *prima facie* evidence of lunacy, but it would be competent for third parties to dispute the fact and to maintain that notwithstanding the inquisition the object was of sound mind at any period of time which it covers." While this is so, it is also true that where the conveyance of a purchaser is overreached by the inquisition, or there is an interest under a contract with the lunatic, the party contracting with the lunatic has a right and the court must permit such purchaser or party to traverse the inquisition. Shelf on Lun., 115, 118, 121 ; 1 Coll., 172 ; 2 Barb. Ch'y Prac., 235 ; *ex parte* Hall, 7 Ves., 260 ; note to *ex parte* Wragg, 5 Ves., 452. An issue is sometimes more advisable than a traverse of the inquisition, as upon the trial of an issue the question may be gone into at large, whereas a traverse is confined to the facts found by the inquisition.

The object of the proceeding disclosed in this record is obviously to affect the decree in chancery. That must be done by a bill, not original, to be filed in that cause, or by some proceeding in that cause, or by an original bill. Whether it is essential first to issue a commission to inquire into the lunacy, we do not determine. The decree in the chancery cause cannot be controlled by an *ex parte* and independent petition of this character.

The case is remanded with directions to dismiss the petition.